**CLEARWATER TRANSPORT, INCORPORATED, doing business as Hawkinson Van Lines, Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.**

Nos. 97–2371, 97–2647.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1997.

Decided Jan. 13, 1998.

Jeffrey C. Kauffman, Allegra R. Rich, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, David C. Nelson (argued), Ronald K. Fisher, Harris, Dowell, Fisher & Harris, Chesterfield, MO, for Clearwater Transport, Incorporated.

Elizabeth Kinney, National Labor Relations Board, Region 13, Chicago, IL, Aileen A. Armstrong, Frederick C. Havard, National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Ralph R. Tremain, National Labor Relations Board, Region 14, St. Louis, MO, Jeffrey Lawrence Horowitz (argued), National Labor Relations Board, Washington, DC, for National Labor Relations Board in Docket No. 97–2371.

Jan Bond (argued), Diekemper, Hammond & Shinners, St. Louis, MO, for Teamsters Local Union No. 600.

Elizabeth Kinney National Labor Relations Board, Region 13, Chicago, IL, Jeffrey Lawrence Horowitz (argued), Aileen A. Armstrong, National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Ralph R. Tremain, National Labor Relations Board, Region 14, St. Louis, MO, for National Labor Relations Board in Docket No. 97–2647.

Before POSNER, Chief Judge, and BAUER and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Clearwater Transport, Inc. petitions for review of a decision and order of the National Labor Relations Board. The Board has filed a cross-application for enforcement of its order. For the reasons set forth below, we deny the petition for review and grant enforcement of the Board's order.

## BACKGROUND

Petitioner/cross-respondent Clearwater Transport, Inc. ("Clearwater") is an Illinois corporation with its principal place of business in Hazelwood, Missouri, which is engaged in the interstate transportation of United States mail. On October 1, 1996, Teamsters Local Union No. 600, affiliated with the International Brotherhood of Teamsters, AFL–CIO ("Local 600"), filed an election petition with respondent/cross-petitioner, the National Labor Relations Board ("NLRB" or "Board"). Local 600 was seeking to represent some of Clearwater's employees for collective bargaining purposes.[1] Clearwater and Local 600 filed a stipulated election agreement, approved by the Acting Regional Director of the NLRB on October 17, 1996, in which the parties agreed to hold an election between November 11 and November 15, 1996.

---

1. Employees eligible to vote included all employees except office clerical and professional employees, guards, supervisors, the Operations Manager, the Assistant Operations Manager, the Safety Director, the Assistant Safety Director, and the Log Officer. *See* Stipulated Election Agreement, NLRB Record Ex. 7.

On October 29, 1996, Clearwater held a safety meeting which was attended by between 10 and 15 employees. After a variety of safety issues were discussed, two managers left the meeting to bring in Clearwater's owner, Jerry Blumoff, to speak to the employees. While the managers were absent from the room, employee Cobie Shinauld, Jr. ("Shinauld") stood up and said "Who wants to hear what that Jewish son of a bitch has to say anyway?" Shinauld was fired by Clearwater the next day, and subsequently (on October 31) filed a charge with the NLRB alleging that he was terminated and discriminated against "in order to discourage membership in and activities on behalf on Teamsters Local No. 600." While Shinauld's charge was pending, the election at Clearwater began as scheduled on November 11, 1996. On November 14, however, four days into the election, the Regional Director of the NLRB issued a letter to Shinauld stating that the Board would not issue a complaint on the matter, due to insufficient evidence. The election wrapped up on November 15, its appointed date, and resulted in a victory for Local 600, 30 to 22, with five challenged ballots.[2] Only 57 of 71 eligible voters participated in the election, and the five challenged ballots were insufficient to affect the outcome of the election.

On November 22, 1996, Clearwater filed four objections to the election, only one of which is at issue in this appeal. That objection, Objection 2, related to Shinauld's conduct at the October 29 meeting and alleged:

The Union by its officers, agents and/or representatives interfered with, restrained or coerced employees of the employer and/or otherwise engaged in conduct effecting [sic] the results of the election by creating an atmosphere of fear and coercion among the employees by disrupting a meeting held by the employer with respect to its employees; acting in an abusive fashion towards management employees during the course of such meeting by engaging in religious harassment.

*See* Appendix to Clearwater's Brief (hereinafter "App.") at 15. On January 2, 1997, the Regional Director of the NLRB overruled all of Clearwater's objections, stating with respect to Objection 2:

Assuming, as I do for purposes of decision, that [Shinauld's] statement was made, it is insufficient to constitute objectionable conduct. The utterance of a racially-based epithet in this single instance falls far short of the sort of racially-based campaign which the Board considers objectionable.... Further, there is no evidence that the comment bore any relationship to the Union's organizational effort or the Employer's response to it. Finally, there is no evidence that the employee who made the statement was an agent of the Union. It is incumbent upon the objecting party to submit evidence in support of its objections which, prima facie, would warrant setting aside the election.... I find that the Employer has failed to submit such evidence with reasonable specificity. Accordingly, I recommend that Objection 2 be overruled.

*See* App. at 11. Clearwater filed exceptions to the Regional Director's report with the NLRB on January 15, 1997. On February 7, 1997, a three-member panel of the NLRB rejected Clearwater's contentions, adopted the Regional Director's findings and recommendations, and certified Local 600 as the collective-bargaining representative for Clearwater's employees.

In order to appeal the Board's certification, Clearwater refused to bargain with Local 600, prompting them to file a charge alleging that Clearwater was violating sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5). After an amended charge was filed, a complaint was issued by the Regional Director of the NLRB on April 8, 1997. Clearwater answered the complaint, and the case was transferred to the Board for a final determination. On April 25, the General Counsel for the NLRB filed a motion for summary judgment, which was granted by the NLRB on May 22, 1997. In its decision and order, the Board concluded that Clearwater had failed to raise any issue which could be litigated at that time and reaffirmed that Local 600 was

---

**2.** 29 C.F.R. § 102.69(a) allows any party or NLRB agent to challenge, for good cause, the eligibility of any person to participate in the election.

the certified collective-bargaining representative for Clearwater's employees. See App. at 31. Accordingly, the Board ordered Clearwater to cease and desist from refusing to bargain with Local 600 and from interfering with its employees' exercise of their rights. In response, Clearwater filed a petition for review of the Board's decision, alleging that the NLRB had made a variety of errors in overruling its objections and in failing to hold an evidentiary hearing on the matter. The NLRB subsequently filed a cross-application for enforcement of its order, and these petitions are the matters presently before us.

## STANDARD OF REVIEW

■ When reviewing a determination of the NLRB, we apply a deferential standard. Thus, "the results of a Board-supervised and certified election are presumptively valid [and] we are obligated to affirm the NLRB's findings of fact and its applications of law to fact if they are supported by substantial evidence on the record considered as a whole." *Overnite Transp. Co. v. NLRB*, 104 F.3d 109, 112 (7th Cir.1997) (quoting *Uniroyal Technology Corp. v. NLRB*, 98 F.3d 993, 997–98 (7th Cir.1996)) (other citations omitted). Similarly, when reviewing a determination of the Board not to hold a hearing on a company's objections, we are to defer to its decision if it is supported by substantial evidence. *NLRB v. Lake Holiday Assocs., Inc.*, 930 F.2d 1231, 1237 (7th Cir.1991) (citation omitted). However, we review the NLRB's conclusions of law *de novo. NLRB v. Champion Laboratories, Inc.*, 99 F.3d 223, 227 (7th Cir. 1996) (citing *Smiths Industries, Inc. v. NLRB*, 86 F.3d 76, 79 (6th Cir.1996)).

## DISCUSSION

In its petition for review, Clearwater asserts that the Board committed the following errors in arriving at its decision and order: 1) the Regional Director and the NLRB applied an erroneous standard in finding that Shinauld's statement did not constitute misconduct sufficient to set aside the election; 2) the NLRB erroneously certified Local 600 as the collective bargaining representative of Clearwater's employees, since Shinauld's conduct and its effects on other members of

the bargaining unit precluded the holding of a fair election; and 3) even if there was not enough evidence to deny certification, Clearwater presented sufficient evidence to warrant a hearing on its objections. Because we find that the Board's decisions are supported by substantial evidence, we enforce its order.

### 1. Application of Erroneous Standard

First, Clearwater argues that the NLRB and the Regional Director applied an erroneous standard in denying its second objection to the representation election. In a nutshell, Clearwater asserts that the Board incorrectly found that since Shinauld was not a union agent, his religious slur was not misconduct sufficient to set aside the election. We note that this is an inaccurate summary of the Regional Director's reasoning: he overruled Clearwater's objection because Shinauld's epithet fell short of being objectionable conduct, because no evidence linked the comment to the union's organizational effort, and because Shinauld was not an agent of the union. *See* App. at 11. While we find that the Regional Director may have utilized the wrong standard in examining the election, his ultimate decision is supported by substantial evidence, and Clearwater's petition must be denied.

■ The NLRB is in charge of conducting representation elections, and also oversees the propaganda activities of the participants. In so doing, the Board seeks "to insure that the voters have the opportunity of exercising a reasoned, untrammeled choice for or against labor organizations seeking representation rights." *Sewell Mfg. Co.*, 138 N.L.R.B. 66, 69 (1962). The NLRB's expressed goal in holding such elections is "to provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees." *General Shoe Corp.*, 77 N.L.R.B. 124, 127 (1948). Misconduct of the parties can, however, sufficiently interfere with these "laboratory conditions" that the results of an election must be set aside and a new election held. *See Sewell*, 138 N.L.R.B. at 72 (resort to racial prejudice by employer prevented "uninhibited desires" of employers from being determined and re-

sults of election were set aside); *NLRB v. Carl Weissman & Sons, Inc.,* 849 F.2d 449, 450 (9th Cir.1988) (per curiam) (reviewing rerun representation election after first election was overturned because of union official's anti-Semitic remark prior to election).

In this case, there is a slight twist: the anti–Semitic remark was made by a third-party, not by either the employer or the union (or their respective agents).[3] In situations where intimidation and harassment are undertaken by a third-party, the Board "will overturn the election only if the conduct 'created such an atmosphere of fear and reprisal that the rational, uncoerced selection of a bargaining representative was rendered impossible.'" *Overnite Transp. Co.,* 104 F.3d at 113 (quoting *Tuf–Flex Glass v. NLRB,* 715 F.2d 291, 296 (7th Cir.1983)). In a case more analogous to the present case, *NLRB v. Katz,* 701 F.2d 703 (7th Cir.1983), we found that the relevant inquiry when third-parties make improper remarks is "whether the inflammatory remarks could have impaired the employees' freedom of choice in the subsequent election." *Katz,* 701 F.2d at 707 (citing *Advertisers Mfg. Co. v. NLRB,* 677 F.2d 544, 546 (7th Cir.1982)). In *Did Bldg. Services, Inc. v. NLRB,* 915 F.2d 490 (9th Cir.1990), the Ninth Circuit rejected the test we established in *Katz,* finding it to be "too inclusive" and unsupported by the citation to *Advertisers Manufacturing. Did,* 915 F.2d at 498 n. 9. Instead, the Ninth Circuit found that "[t]o require election invalidation, an employee's appeal to prejudice must so taint the election atmosphere as to render free choice of representation impossible." *Id.; accord M & M Supermarkets, Inc. v. NLRB,* 818 F.2d 1567, 1572–73 (11th Cir.1987) (proper inquiry in third-party misconduct cases is whether "the acts [of the third party] 'destroyed the atmosphere necessary to the exercise of a free choice in the representation election.'") (quoting *NLRB v. Claxton Mfg. Co., Inc.,* 613 F.2d 1364, 1371 (5th Cir.1980)). While the standards set forth by the Ninth and Eleventh Circuits may more accurately describe the relevant

inquiry, we decline to adopt them at this time (despite Clearwater's urging) because we find that even under the more inclusive standard of *Katz,* the Board's decision is correct.

We note that the Regional Director did not expressly state the standard he was using to examine the election at Clearwater. However, he did cite *Beatrice Grocery Products, Inc.,* 287 N.L.R.B. 302, 303 (1987), in which the NLRB, in response to a single use of a racial epithet, stated that it could not conclude "that this single incident 'so lowered' proper election standards 'that the uninhibited desires of the employees could not be determined in the election.'" *Beatrice,* 287 N.L.R.B. at 303 (quoting *Sewell,* 138 N.L.R.B. at 72). Upon close examination, *Beatrice* does not address conduct analogous to that in the present case, and the Regional Director's reliance on it is questionable. In *Beatrice,* an employee informed other employees that a representative of the employer had called them "dumb niggers." The Board found this remark, assuming it was said, was "arguably germane to the election" because "it [was] not far off the mark as a characterization of the demeaning way the employees believed they were being treated by the employer." *Id.* at 303. Thus, the Board found that the conduct at issue did not violate *Sewell's* prohibition against the gratuitous injection of race into an election.

The troubling aspect of the Regional Director's reliance on *Beatrice,* beside the fact that the conduct at issue is different (an agent of the employer evinced racial prejudice, not a third-party), is that *Beatrice* specifically states that the context in which the remark was made is different from that in *M & M Supermarkets* and *NLRB v. Silverman's Men's Wear,* 656 F.2d 53 (3d Cir.1981) (discussed *infra*). Further, the Board specifically states that "[h]ad a union representative used such a term in comments attacking a particular racial, ethnic, or religious group, or made racial, ethnic, or religious references as part of an inflammatory campaign theme, or had the representative brought up references to racial, ethnic, or religious groups in

---

**3.** While Clearwater alleges that the NLRB improperly based its decision on Shinauld not being an agent of the union, it does not attack this

finding itself and the record contains no evidence that Shinauld was such an agent.

a totally gratuitous way, unconnected to any employee concerns, we would not hesitate to set aside the election." *Beatrice*, 287 N.L.R.B. at 303. Rather than taking notice of these statements, the Regional Director appears to have focused on the fact that *Beatrice* cited *Sewell* for the proposition that casual, isolated, prejudicial remarks are to be treated differently from a party's sustained course of such activities. *Id.* at 302. The Regional Director's cite to *Beatrice*, therefore, does not convince us that he utilized the right standard in examining the election at Clearwater.

■ As we discuss below, however, whether the Regional Director (and the NLRB) applied an erroneous standard is immaterial in this case because the ultimate result is correct and supported by substantial evidence. We voice strong objection to the Regional Director's seemingly casual reading of *Beatrice*, and also to his abbreviated discussion of Clearwater's objection. The Regional Director, as well as the Board, must make explicit in its decisions the standards it utilized and the factual conclusions it reached with regard to each objection. This decision was lacking in both respects, and we expect future decisions to be more detailed. Despite the shortcomings of the Board's findings, however, we find that its determination that no new election was required is correct.

## 2. Effect of Misconduct on Election

■ Clearwater asserts that Shinauld's conduct and its effects on other Clearwater employees precluded the holding of a fair election. And, it argues, the Board should not have certified Local 600 as the collective bargaining representative but should instead have ordered a new election. In reviewing Clearwater's contentions, we keep in mind that "the burden is on the 'party objecting to the conduct of the election to prove that there has been prejudice to the fairness of the election.'" *M & M Supermarkets*, 818 F.2d at 1573 (quoting *Southwestern Portland Cement Co. v. NLRB*, 407 F.2d 131, 134 (5th Cir.), *cert. denied*, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969)). Because Clearwater has failed to produce any evidence to show that Shinauld's remark

damaged the fairness of the election, we deny Clearwater's objections.

Clearwater argues that, for a variety of reasons, the Regional Director's decision to overrule Clearwater's Objection 2 was based on erroneous conclusions. For one, Clearwater points out, the fact that Shinauld made a single religious slur does not preclude a finding that the election was so tainted as to require being set aside. Clearwater cites *NLRB v. Silverman's Men's Wear, Inc.*, 656 F.2d 53 (3d Cir.1981), in which an order of the NLRB was denied enforcement. In *Silverman's*, the union's secretary-treasurer had misrepresented to approximately 20 employees (out of 56) certain information about wages and had called the company's president a "stingy Jew." The Third Circuit found that the Board had erroneously overruled the company's objection about this statement without holding a hearing, and denied enforcement of the Board's order. *Silverman's*, 656 F.2d at 60. That case, however, is distinguishable from the present one for several reasons, and we find that it is not determinative here: 1) the religious slur was made by a union representative, not a rank and file employee, and 2) the employer proffered witnesses in support of its objections, whereas (as we discuss below) Clearwater provided no evidence regarding the impact of the remark.

Clearwater also cites *M & M Supermarkets*, in which the Eleventh Circuit refused to enforce an order of the Board. During a meeting held by the company's personnel manager, at which the company's position regarding the union was to be made clear, an employee who was an outspoken union supporter (but not an agent of the union) stood up and stated:

> The damn Jews who run this company are all alike. They pay us pennies out here in the warehouse, and take all their money to the bank. The Jews ought to remember their roots. [The company's president] should remember his roots. Us blacks were out in the cotton field while they, the damned Jews, took their money from the poor hardworking people.

After the supervisor attempted to defend the president's reputation, the employee loudly

stated that "I want [the president] to come out and talk to me, and I'll tell him what he is." When told that the president intended to speak to the employees, the employee said, "Good, I'll be waiting. I'll tell him what he is. Those damned Jews are no good." *M & M Supermarkets*, 818 F.2d at 1569–70. Ultimately, enforcement of the Board's order was denied because it had failed to apply the proper legal standard to determine the effect of the remarks. In any event, this case is distinguishable because we are dealing with one isolated bigoted remark, not an extensive tirade. *M & M Supermarkets*, therefore, does not support the proposition that one remark can invalidate an election, and its citation by Clearwater is not helpful.

The fatal problem with Clearwater's argument is the fact that it did not provide any evidence that Shinauld's remark had an effect on the election. The only evidence we can find in the record relating to Shinauld's remark is evidence which merely establishes that the slur was made, not evidence which shows the effect it had on anybody who heard it. While Clearwater speculates as to possible effects Shinauld's remark could have had, it does not supply any specific evidence to back up its claims. For example, in its brief to the Board, Clearwater states that "[s]everal employees were upset and complained regarding the comment." *See* Employer's Replacement Brief, Pleadings Vol. I, 1/30/97 at 9. Rather than attaching any statements from the employees who complained, Clearwater submitted only items relating to the NLRB's investigation of Shinauld's unfair labor practices complaint stemming from his termination from Clearwater. Clearwater's brief before the Board, as its brief before this court, is replete with such accusations and hypotheticals, but there is no evidence in the record to establish that they are true. Clearwater, therefore, failed to meet its burden of proving that there was prejudice in the election, and the decision of the Board on this point is not erroneous.

This discussion also disposes of Clearwater's other allegations, which we need not discuss individually. The gist of Clearwater's arguments is that the NLRB and the Regional Director came to an erroneous conclusion that its objection should be overruled;

however, all the supposed errors cited by Clearwater are unsubstantiated by any evidence. Therefore, we find that Clearwater has failed to show that Shinauld's remark prejudiced the outcome of the election, and all of its present objections fall short of demonstrating that the Board's decision was not supported by substantial evidence. Therefore, we deny Clearwater's petition for review.

### 3. Failure to Hold Evidentiary Hearing

Finally, Clearwater argues that the Regional Director erred when he failed to hold a hearing on its objections. The Board may not resolve factual disputes or draw inferences without offering the objecting party either a hearing or compulsory process to obtain evidence. However, the Regional Director is only required to hold a hearing when "substantial and material factual issues" exist. *Lake Holiday Assocs*, 930 F.2d at 1236–37 (quoting *NLRB v. Lovejoy Industries, Inc.*, 904 F.2d 397, 399–400 (7th Cir.1990)). Such material issues of fact only exist when the employer "presents facts sufficient to support a prima facie showing of objectional conduct, that is, of misconduct sufficient to set aside the election under the substantive law of representation elections." *Lake Holiday Assocs*, 930 F.2d at 1237 (quoting *Lovejoy*, 904 F.2d at 400) (internal quotations and other citations omitted). Thus, a party challenging an election because of a third-party's misconduct is only entitled to a hearing if it presents facts sufficient to support a prima facie showing that the conduct "so influenced potential voters that free choice was impossible." *See NLRB v. O'Daniel Trucking Co.*, 23 F.3d 1144, 1149 (7th Cir.1994) (outlining showing required for union misconduct) (quoting *Van Leer Containers, Inc. v. NLRB*, 841 F.2d 779, 785 (7th Cir.1988)). In order to do so, the party must proffer "specific evidence from or about specific people." *NLRB v. Service American Corp.*, 841 F.2d 191, 195 (7th Cir.1988) (quoting *NLRB v. Douglas County Election Membership Corp.*, 358 F.2d 125, 130 (5th Cir. 1966)).

 In this case, as the Regional Director found, Clearwater failed to submit any facts which made a prima facie showing of misconduct sufficient to set aside the election, and a hearing was properly denied. In its brief, Clearwater cites a litany of possible repercussions from Shinauld's statement and subsequent actions. For example, Clearwater argues that a single religious slur can destroy the laboratory conditions of the election, especially in a case like this where it was made in front of 10 or 15 (out of approximately seventy) potential voters. *See* Clearwater's Brief at 11–14. However, in the record before us, there is a complete dearth of *evidence* to back up these claims. In the proceedings before both the Regional Director and the Board, Clearwater was apparently content to rest on the record from Shinauld's unfair labor charge to prove that his statement affected the election. That record (which is aptly described as scant), however, merely establishes that the remark was uttered by Shinauld but does not show that anyone who heard it was affected by it and lost the ability to voice his or her free will during the election. Clearwater provided only speculation and conjecture about the effect of Shinauld's statement on the election, and conjecture and speculation are insufficient to establish a prima facie case of misconduct sufficient to set aside the election. Clearwater's other hypotheticals similarly lack support, and we need not discuss them here. Since Clearwater failed to provide any facts to support a prima facie showing of misconduct sufficient to disturb the election, the determinations of the Regional Director and the NLRB to forego a hearing were proper. *See O'Daniel Trucking,* 23 F.3d at 1151 (objecting company failed to meet burden of presenting facts which show that the Board's decision was not supported by substantial evidence).

### CONCLUSION

For the reasons set forth above, we find that the Board's decision to overrule Clearwater's objections without holding a hearing is supported by substantial evidence. Accordingly, Clearwater's petition for review is DENIED, and the order of the Board is ENFORCED.