In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2764

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

AMERICOLD LOGISTICS, INC.,

Respondent.

Application for Enforcement of Judgment
from an Order of the National Labor Relations Board
No. 33-CA-12882

Argued April 21, 2000--Decided June 6, 2000

Before BAUER, KANNE, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  Marking an X in either the "yes" or "no" box of a ballot might not seem like a particularly demanding task. But in this labor election on whether to unionize, one ingenious worker forsook those unimaginative choices, ignored the ballot's clearly written directions, and instead scribbled "neither nor" on his ballot, creating a quandary that put the outcome of the election in doubt.

In April 1998 the National Labor Relations Board conducted a secret ballot election to decide whether employees of AmeriCold Logistics, Inc. wished to be represented by Teamsters Local 325, affiliated with the International Brotherhood of Teamsters, AFL-CIO. AmeriCold operates a refrigerated food warehouse in Rochelle, Illinois. Out of approximately 44 eligible voters, 43 ballots were cast, though one was cast by an ineligible voter. Not counting that vote (which was challenged by the Board), another vote (which was challenged by the union), and the "neither nor" vote (which was voided by the Board), the score was 21 votes in favor of union representation and 19 votes against.

AmeriCold filed a hatful of objections to the election, including:

Some of the company's anti-union campaign

materials were defaced or destroyed.

Some of the union's campaign materials were unfair.

Pro-union campaign literature was distributed within 24 hours of the election.

Union supporters engaged in intimidation and harassment.

Clayton Smart, whose vote was challenged by the union, was eligible to vote.

Former employee Joe Williams, whose vote was challenged by the NLRB, was ineligible to vote.

The "neither nor" vote, which was voided, should have been counted as a vote against the union.

   The Board's regional director overruled AmeriCold's objections without holding an evidentiary hearing. AmeriCold filed exceptions to the regional director's report, but the Board itself adopted the regional director's findings and recommendations, again without holding a hearing. During the course of these proceedings, the union conceded that Williams was ineligible and that Smart's vote was valid. That meant that if Smart voted against the union, the tally would be 21-20 for the union. The regional director declined to open Smart's ballot, in keeping with the Board's policy to protect the secrecy of nondeterminative ballots. See, e.g., Monarch Fed. Sav. and Loan Ass'n, 236 N.L.R.B. 874, 1978 WL 7765, *2 (1978). AmeriCold filed another round of objections that again were rejected by the regional director and another round of exceptions that again were rejected by the Board. The Board then certified the union as the exclusive bargaining representative of the company's warehouse and maintenance employees.

   Refusing to bargain is the only way for an employer to get judicial review of an NLRB decision upholding an election and certifying a union. NLRB v. Service Am. Corp., 841 F.2d 191, 193 n.3 (7th Cir. 1988). Accordingly, AmeriCold refused to bargain, the union filed a charge, the Board issued a complaint, AmeriCold admitted refusing to bargain but argued the union was improperly certified, and the Board granted summary judgment that AmeriCold had violated the National Labor Relations Act. 29 U.S.C. sec. 158(a)(1) and (5). That labyrinthian chain of events finally brings us to this appeal, where the real issue is whether the NLRB was right in finding that the union won the election fair and square.

AmeriCold claims that the Board should have nullified the election or, at the least, held an evidentiary hearing to explore further the company's complaints that the union interfered with a fair election through harassment and intimidation. Aside from that, AmeriCold contends that the "neither nor" ballot voided by the Board should have been counted as a no vote. Assuming Smart voted against the union, that would knot the election in a 21-21 tie. And like a base runner who reaches the bag at the same time as the ball, a tie goes to the company. See Peter O'Dovero d/b/a Associated Constructors and O'Dovero Constr., Inc., 325 N.L.R.B. 998, 1998 WL 380989, *2 (1998).

At the outset, we decline AmeriCold's invitation to modify the standard of review in NLRB cases. We presume the validity of a Board-supervised election and will affirm the Board's certification of a union if that decision is supported by substantial evidence. Clearwater Transp., Inc. v. NLRB, 133 F.3d 1004, 1008 (7th Cir. 1998). Decisions by the Board (including its regional director) not to hold a hearing on a company's objections receive similar deference and will be affirmed if supported by substantial evidence. Id. AmeriCold contends that deference is unwarranted because the Board never held a hearing at which it made credibility determinations. The rationale for deference is not limited to the original finder of fact's superior position for making determinations of credibility, but also is based on the expertise developed by experience. See Anderson v. Bessemer City, 470 U.S. 564, 574-75 (1985). The high volume of cases handled by the Board, which was created for the very purpose of dealing expeditiously with these situations, gives it far more expertise in this area than a circuit court of appeals. "[A] decision not to hold a hearing when confronted with certain evidence amounts to a decision that this evidence is not a prima facie case of enough misconduct to set aside an election. That is the sort of decision the Board was established to make, and to which the courts must defer." NLRB v. Lovejoy Indus., Inc., 904 F.2d 397, 402 (7th Cir. 1990). See also NLRB v. Chicago Tribune Co., 943 F.2d 791, 794 (7th Cir. 1991).

The NLRB must hold a hearing when the employer makes a prima facie showing of misconduct that would be sufficient to set aside the election. Id. at 400. AmeriCold has dropped on appeal its objections regarding the content, distribution, and defacement of campaign literature. The company's remaining case that union intimidation influenced the election is built on a trio of slender reeds.

First, AmeriCold makes much ado about the appearance on election day of Williams, who had been fired 3 months earlier. The company said it let Williams go because of his poor work record and several accidents, but the union filed an unfair labor practice complaint alleging that the discharge was motivated by Williams' union activities. The unfair labor practice charge later was settled and the union and the company agreed that Williams' vote should not be counted. The legitimacy of his vote always was in doubt because he was not on the list of eligible voters, prompting the Board agent who conducted the election to challenge his ballot. How this incident could have influenced other voters at all--much less to the point where the whole election must be wiped out, as the company argues--is a mystery.

Second, the company points to an angry, profane argument 6 days before the vote between alleged union supporter Steve Lemmer and professed union opponent Smart. There is zero evidence that the dispute, which began when Lemmer expressed a certain lack of zest about being at work that day, had anything to do with the impending union vote or was connected to the union's subsequent challenge of Smart's ballot. Even if there were a link, the notion that the union chilled the free choice of other workers by challenging Smart's vote is farfetched. The union withdrew its challenge and Smart's vote now would be counted if it were determinative. Just because the union's challenge proved unfounded does not require a do-over of the entire election.

Third, the company notes that union supporter Rick Coil maneuvered his forklift next to Terry Rosenbaum several times before the election and extolled the virtues of the union in a manner that intimidated and bothered Rosenbaum. AmeriCold also suggests that by appointing Coil as its election observer, the union intimidated employees who had to walk past him to cast their ballot. Coil's work on election day as an observer does not make him a union agent. We defer to the regional director's finding that Coil was nothing more than an enthusiastic union supporter. See Overnite Transp. Co. v. NLRB, 104 F.3d 109, 113 (7th Cir. 1997). For the Board to overturn the election, Coil's actions would have needed to create such an atmosphere of fear and reprisal that his fellow workers would have been rendered incapable of voting in a rational, uncoerced manner. Id. Coil's lobbying of Rosenbaum, even if a bit pushy, does not rise to the level of bullying that would necessitate a hearing. See Lovejoy, 904 F.2d at 402 ("[e]mployees' apprehension is not itself sufficient to spoil the vote"). And Coil's

presence as a union election observer apparently was not menacing enough to stop 42 of the 44 eligible employees from casting their ballots, which of course were secret.

These incidents stack up neither to grounds for invalidating the election nor for ordering an evidentiary hearing. We are unpersuaded by the conjecture and surmise that fills the company's brief, such as "less vocal employees could expect that they would likewise be harassed," "this could not help but have an intimidating effect," "those who had to pass under Coil's eye to vote could hardly have felt that they were taking part in a free and fair election," "such an unexpected and inappropriate act must have had a chilling effect," and "Williams' presence may have led other employees to believe the union was trying to rig the election." Cf. Clearwater, 133 F.3d at 1011 (the employer's brief "is replete with such accusations and hypotheticals, but there is no evidence in the record to establish that they are true").

AmeriCold complains that it was unable to establish that Coil was a union agent and generally was prevented from building a stronger case of union intimidation without the compulsory discovery that comes with an adversarial hearing. See NLRB v. Valley Bakery, Inc., 1 F.3d 769, 772 (9th Cir. 1993). But AmeriCold is not entitled to a hearing just because it wants one, just because it claims that the election was tainted, just because it says it could really pin things down if it were granted a hearing. The conduct protested by AmeriCold, assuming it took place, is too flimsy to set aside the election and thus falls short of what is needed to trigger a hearing. The swift resolution of union certification disputes would be defeated if the Board were obliged to conduct an evidentiary hearing into intimidation every time an ineligible voter cast a vote that was not counted, or every time the union superfluously challenged a legitimate ballot, or every time a worker spoke vociferously in favor of a union to co-workers. As Lovejoy, 904 F.2d at 402, explains, our role in deciding when a hearing is appropriate is small. The Board is the best suited to make the case-by-case judgment call on whether the company has presented enough evidence of objectionable conduct to justify an evidentiary hearing, and we see no reason to overturn the Board's decision here.

That leaves us with what to make of the puzzling "neither nor" ballot. If in November a person fails to pull the lever for Al Gore or George W. Bush or any of the other presidential candidates, but instead scrawls an oblique

message on the ballot, no vote will be counted. The NLRB, however, takes a more liberal approach. See TCI West, Inc. v. NLRB, 145 F.3d 1113, 1117 (9th Cir. 1998). The Board's policy--and the rule in this circuit--is to count ballots when the voters' intent is clear, despite irregularities in the manner in which the ballots have been marked. Brooks Brothers, 316 N.L.R.B. 176, 1995 WL 37611, *1 (1995); NLRB v. Martz Chevrolet, Inc., 505 F.2d 968, 971 (7th Cir. 1974). We give deference to the Board's interpretation of a ballot and will reverse only for abuse of discretion. Clearwater, 133 F.3d at 1008; Sioux Products, Inc. v. NLRB, 703 F.2d 1010, 1018 (7th Cir. 1983).

The ballot in this election read: "Do you wish to be represented for purposes of collective bargaining by -- TEAMSTERS LOCAL 325 AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO . . . MARK AN 'X' IN THE SQUARE OF YOUR CHOICE." Reproduced as Figure 1 at the end of this opinion, the spelling-challenged author of the disputed ballot wrote "Neithor Nor" between the yes and no boxes.

AmeriCold contends that the "neither nor" means that the voter wished to be represented by neither Teamsters Local 325 nor the International Brotherhood of Teamsters and thus the vote should go in the anti-union column. This surely is one plausible interpretation, though it would be more plausible if the "neither nor" had been written immediately after the references to the local and international union instead of between the yes and no boxes.

AmeriCold's view, however, is not the only possible interpretation. Perhaps the voter didn't care for the union or the company and was expressing his frustration with the seeming inability of people on both sides of almost any election these days to behave like civilized human beings. All of this is speculation.

Consequently, the Board's conclusion that the voter's intent is ambiguous and the ballot must be voided is not at all unreasonable. Unlike the ballot at issue in TCI West, 145 F.3d 1113, and the cases collected therein, this is not a situation where a voter marked--or began marking--one box and then tried to make clear that he really meant to mark the other box.

Because the Board legitimately voided the "neither nor" ballot, the score remains 21-19 in favor of the union, and Smart's nondeterminative ballot need not be opened. The election stands. The Board is entitled to enforcement of its order in full.

Figure 1