In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2887

National Labor Relations Board,

Petitioner,

and

International Union of Elevator Constructors,
AFL-CIO,

Intervening-Petitioner,

v.

River City Elevator Company, Inc.,

Respondent.

On Application for Enforcement of an Order
of the National Labor Relations Board.

Argued April 5, 2002--Decided May 13, 2002


   Before Flaum, Chief Judge, and Posner and
Rovner, Circuit Judges.

   Flaum, Chief Judge.  The National Labor
Relations Board ("NLRB") seeks the entry
of an enforcement order requiring River
City Elevator Company, Inc. ("River
City") to bargain with the International
Union of Elevator Constructors ("the
Union"). River City argues that, during
the election to determine whether the
Union would represent River City
employees, it sought to influence the
election outcome by promising employees
certain benefits. For the reasons stated
below, we deny the Board's application to
enforce its order and reverse any finding
by the Board that River City committed an
unfair labor practice.

I.  BACKGROUND

   In October of 1999, the Union filed a
petition with the NLRB seeking
certification as the collective
bargaining representative of River City's
elevator mechanics and helpers. On
November 18, 1999, an election was
conducted among seven River City

employees to determine whether they wished to be represented by the Union. The results of the secret ballot election were very close--with four out of seven employees choosing Union representation.

On November 24, 1999, River City filed objections to the election. According to River City, the Union interfered with election conditions by promising certain benefits to the voting employees. An NLRB hearing officer and subsequently the Board itself denied River City's objections. The Union was then certified as the bargaining representative for River City's employees. Shortly after this certification, the Union sent River City a request to enter into collective bargaining./1 River City refused this request and, as a result, the Union filed an unfair labor practice charge against it for its failure to recognize and negotiate with the Union. Pursuant to the Union's complaint, the General Counsel of the NLRB filed a motion with the Board requesting that River City be compelled to enter into negotiations with the Union. The NLRB granted that motion. This appeal, on application for the enforcement of the order compelling River City to bargain, has ensued.

The allegations contained in River City's objections to the results of the Union election also form the gravamen of its appeal. Specifically, River City contends that, by offering reductions in initiation fees and union dues, as well as by giving River City employees Mechanic's cards (when those employees had not completed the requisite course work and examinations), the Union intended to interfere with the laboratory conditions of the election./2

During the period leading up to the election, representatives of the Union met with River City employees. During these meetings, Union representatives informed the employees that, normally, new members were charged an initiation fee of $440. However, the Union told the employees that, because of the organizing drive, it would reduce the initiation fees that they would be required to pay to $50./3 The Union's offer to reduce initiation fees and dues was made to all employees and was not conditioned uponemployee support for the Union at the ballot box.

Representatives from the Union also offered all of the River City employees Mechanic's cards, even though they had not completed the requisite training programs./4 The National Elevator Industry Educational Program (NEIEP) was established in 1967. Pursuant to collective bargaining entered into between the Union and the National Elevator Industry, the NEIEP prescribes the course of training individuals must undertake in order to qualify as a Mechanic. According to the Union's Standard Agreement, no individual "may qualify or be raised to the Capacity of Mechanic until he has worked for a period of three (3) years in the elevator industry, has successfully completed the required NEIEP courses, and has passed a Mechanic's Examination administered by the NEIEP Director's Office." IUEC Standard Agreement, p. 51. In the period leading up to the election, the Union promised River City employees Mechanic's cards based upon their experience (as determined by Union representatives) regardless of whether they had completed NEIEP requirements.

II.  DISCUSSION

Because River City refused to enter into collective bargaining with the Union, the issue presented in this appeal is whether the Board acted reasonably in certifying the Union as the employees' representative. If we determine that the Board's action was reasonable, the Board is entitled to the enforcement of its order compelling River City to enter into collective bargaining. See National By-Products, Inc. v. NLRB, 931 F.2d 445, 448 (7th Cir. 1991).

In reviewing the factual findings of the NLRB, we examine them to see if there is substantial evidence in the record as a whole to support the Board's conclusions. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Overnite Transp. Co. v. NLRB, 104 F.3d 109, 112 (7th Cir. 1997). When an objecting party disputes the result of a Board supervised election, there is a formidable burden upon the objecting party to prove that it was not valid. NLRB v. Service American Corp., 841 F.2d 191, 195 (7th Cir. 1988). Indeed, the objecting party must demonstrate that misconduct occurred and

that such misconduct "damaged the fairness of the election." Clearwater Transport, Inc. v. NLRB, 133 F.3d 1004, 1010 (7th Cir. 1998). When we examine the tactics leading up to the election in the instant case, we find that Union misconduct occurred "to such an extent that [it] materially affected the results of the election." Overnite Transp. Co., 104 F.3d at 113.

The seminal case in assessing whether a Union has improperly furnished benefits to influence the outcome of an election is NLRB v. Savair Mfg. Co., 414 U.S. 270 (1973). In Savair, the Supreme Court held that a union's offer to waive initiation fees, conditioned upon employees joining the union prior to an election, was improper conduct that allowed the union to effectively "buy endorsements and paint a false portrait of employee support during its election campaign." Id. at 277. The Court in Savair did not, however, categorically prohibit unions from waiving initiation fees. Rather, Savair has been interpreted to hold that a union's waiver of initiation fees is permissible in an election campaign, when the waiver is available to all employees and is not conditioned upon a demonstration of pre-election support for the union. See, e.g., NLRB v. WFMT, 997 F.2d 269, 277 (7th Cir. 1993); Deming Division, Crane Co., 225 N.L.R.B. 657, 659 (1976). Under such circumstances, a union may waive fees "because employees otherwise sympathetic to the union might well have been reluctant to pay out money before the union had done anything for them. Waiver of the [fees] would remove this artificial obstacle to their endorsement of the union." Savair, 414 U.S. at 273 n.4. (internal citations omitted).

A. Initiation Fees and Union Dues

In the instant case, we find that the Union's offer to reduce initiation fees and dues for River City employees does not offend the principles set forth by Savair. The Union's offer was extended to all employees unconditionally "without distinction between [employees] joining the union before or after the election." Deming Division, Crane Co., 225 N.L.R.B. at 659. Furthermore, the reduction of union fees and dues operated as a removal

of an artificial obstacle to River City employees joining the Union, rather than as an affirmative attempt to influence voting (e.g., providing cash or in-kind items to employees during an election campaign). See, e.g., Owens-Illinois, Inc., 271 N.L.R.B. 1235 (1984) (union's gift of jackets to employees, between voting sessions on election day, amounted to objectionable conduct which could have appeared as a reward or an inducement to vote for the union).

B.  Mechanic's Cards

We find that, unlike the Union's unconditional reduction of initiation fees and dues, its offer of Mechanic's cards to River City employees, when several (if not all) of those employees had not completed the requisite courses or exams, violated the dictates of Savair and effectively bought employee endorsements during its election campaign. 414 U.S. at 277. The Union's Standard Agreement is unambiguous. In order to become a fully qualified Mechanic (and receive a Mechanic's Card), an individual must have "successfully completed the required NEIEP courses, and [have] passed a Mechanic's Examination administered by the NEIEP Director's Office." IUEC Standard Agreement, p. 51.

While it is difficult to quantify the value of receiving a Mechanic's card without having to attend classes or take an exam, we ask "[a]re the articles sufficiently valuable and desirable in the eyes of the person to whom they are offered, to have the potential to influence that person's vote?" Nestle Ice Cream Co. v. NLRB, 46 F.3d 578, 583 (6th Cir. 1995). The NLRB has refused to certify elections where, during the course of an election campaign, the benefit offered to employees appeared to be of far less value. See, e.g., Owens-Illinois, Inc., 271 N.L.R.B. 1235, 1236–37 (gift of union jackets); Wagner Elec. Corp., 167 N.L.R.B. 532, 533 (1967) (union's "gift of life insurance coverage is a tangible economic benefit and is most 'unusual'"); Mailing Services, Inc., 293 N.L.R.B. 565 (1989) (free medical screenings given by union to employees during the election campaign found to be impermissible).

In this case, the NLRB hearing officer, whose findings were subsequently adopted by the Board, determined that no election violation had occurred because the benefits the Union extended to River City employees were not conditioned upon their support of the Union. This finding fails to consider the fact that the "gift" in this case was far different from removing a barrier to employees joining the Union. By granting the River City employees the immediate privileges attendant upon a Mechanic's card (i.e., ability to work as a full Mechanic in practically any IUEC controlled site), the Union opened up an entire class of jobs to these individuals. In this sense, the extension of Mechanic's cards, without the obligation to fulfill training and examination requirements, moves beyond the reduction of initiation fees or dues. River City employees were affirmatively given access to more lucrative jobs at a far lesser cost. At the very least, this gift, in the context of a hotly contested election campaign, "smacked of a 'purchase' of votes because the Union[ ] had no responsibility to provide" these Mechanic's cards. Nestle Ice Cream Co., 46 F.3d at 584. Furthermore, it appears that River City employees could have perceived (quite rightly) that "they were receiving 'something for nothing,' and [that] the 'something' was quite valuable." Id. (internal citations omitted).

The Board has consistently stated that, during an election to determine representation, voting is to occur in a "laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of employees." In re General Shoe Corp., 77 N.L.R.B. 124, 127 (1948). In the instant case, where representation was decided by one vote and gifts of substantial value were offered by the Union as part of its campaign, we find that laboratory conditions did not exist. In light of the above, we conclude that the NLRB did not act reasonably in certifying the Union as the bargaining agent of River City's employees. Furthermore, we find that the Board's factual findings that the Union did not interfere with employees' free choice in the election by improperly offering gifts is not supported by substantial evidence in the record as a

whole.

III.  CONCLUSION

  For the foregoing reasons, we DENY the
Board's application to enforce its
bargaining order and REVERSE any finding
by the Board that River City committed an
unfair labor practice.

FOOTNOTES

/1 In addition, the Union requested certain informa-
tion related to its proposed collective bargain-
ing solicitation.

/2 A Mechanic's card enables an individual to work
as a full Mechanic in the elevator industry.
/3 In addition, the Union offered to reduce monthly
dues to $20 a month, until the employees began
working under covered employment conditions.

/4 From the record, it appears that all seven of the
River City employees had worked for considerable
time in the elevator industry.