In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3639

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

*v.*

E.A. SWEEN COMPANY,

*Respondent.*

On Application for Enforcement of an
Order of the National Labor Relations Board.
No. 13-CA-45563

ARGUED APRIL 15, 2011—DECIDED MAY 16, 2011

Before POSNER and MANION, *Circuit Judges*, and
LEFKOW, *District Judge.*[*]

LEFKOW, *District Judge.* The National Labor Relations
Board seeks to enforce its order halting E.A. Sween Com-
pany's refusal to bargain with Teamsters Local Union
No. 754 after it had been certified as the exclusive collec-

_____

[*] The Honorable Joan Humphrey Lefkow of the Northern
District of Illinois, sitting by designation.

tive bargaining representative of E.A. Sween's truck drivers. E.A. Sween argues that the court should deny the application because the election was invalid. This court has jurisdiction to review the Board's application for enforcement pursuant to 29 U.S.C. § 160(e). We grant the Board's application.

## I.

E.A. Sween distributes food, primarily to 7-Eleven stores in the Chicago area. The Union petitioned the Board to conduct a representation election for the company's truck drivers, and an election was scheduled for August 29, 2008. On the evening of August 28, before the drivers left for their evening shifts, the Union distributed to the drivers a one-page flyer bearing the letterhead of "Teamsters Local 754" in large type along with the Union's logo. The first paragraphs stated:

> **TO ALL E.A. SWEEN DRIVERS:**
>
> 'THE U.S. SUPREME [*sic*] HAS HELD THAT ALL EXITING [*sic*] TERMS AND CONDITIONS OF EMPLOYMENT BY LAW MUST REMAIN THE SAME UNTIL AND DURING CONTRACT NEGOTIATIONS OR APPROVED BY EMPLOYEES.'
>
> THAT STATEMENT MEANS THAT IF YOU ARE DUE A SCHEDULED RAISE AT ANY TIME DURING THE CONTRACT NEGOTIATION PERIOD, BY LAW THE COMPANY **MUST** GIVE YOU THAT RAISE.
>
> IT IS UNLAWFUL FOR **ANY** COMPANY MANAGER, SUPERVISOR, OR HR REPRESENTATIVE TO TELL

AN EMPLOYEE THAT DUE TO UNION ACTIVITY THAT EMPLOYEE WILL NOT RECEIVE THEIR [*sic*] RAISE.

After several more sentences touting the benefits the Union would confer, the flyer provided contact information should any employee be subjected to violation of the rule it described. Of the approximately thirty-eight eligible employees, twenty-seven voted for the Union, six voted against, and one ballot was challenged (thus not material to the outcome).

E.A. Sween filed an objection with the Board. It contended that the flyer "used forged and misrepresented documents and quotes" that were falsely attributed to the Supreme Court. According to the company, these quotes were presented in such a manner that employees would not have been able to recognize them as union propaganda. E.A. Sween also argued that it had insufficient time to rebut the false information. It contended that the flyer improperly influenced the employees to vote for the Union. At a hearing, E.A. Sween presented its human resources and operations managers who testified that employees had been particularly focused on whether they would receive a wage increase because their last collective bargaining agreement, negotiated by the Union, had resulted in a three-year wage freeze. The human resources manager testified that "at least 19 employees" had stated within days of the election that they intended to vote against the Union, and a number of employees had asked questions about the flyer.

The hearing officer found that the flyer, although it contained a misrepresentation of the law, did not interfere with the employees' ability to make a free choice and recommended that the Board certify the Union. She found that E.A. Sween's evidence was insufficient to establish that the document was a forgery "as it was clearly issued by the Union and there is no evidence that the Union attempted to deceive employees into believing that the flyer was issued by the government." She discounted as "unsubstantiated hearsay" the testimony of managers about employees' plans to vote against the Union, stating that it was not entitled to dispositive weight.

E.A. Sween filed exceptions. On August 17, 2009, the two sitting members of the Board adopted the hearing officer's report and certified the Union as the exclusive bargaining representative of E.A. Sween's drivers. Still, E.A. Sween refused to bargain. On October 7, 2009, the Union filed an unfair labor practice charge, claiming violation of sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) and (5). The Board's general counsel issued a complaint, and on December 24, 2009 the two sitting members of the Board issued a decision concluding that the election was valid and that E.A. Sween had engaged in unfair labor practices by refusing to bargain. It issued a plenary order directing the company to bargain.

The Board filed an application for enforcement in this court (*NLRB v. E.A. Sween Co.*, No. 10-1075). We remanded after *New Process Steel, L.P. v. NLRB*, ___ U.S. ___, 130

S. Ct. 2635, 177 L. Ed. 2d 162 (2010), for further pro-
ceedings before a three-member panel of the Board. On
November 9, 2010, the Board, by a three-member panel,
issued a decision finding that the company's refusal to
bargain violated sections 8(a)(1) and (5). The Board
did not address the validity of the election, noting
that no new evidence or special circumstances would
require the Board to reexamine the decision made in the
first proceeding. Again, the Board ordered the company
to bargain with the Union. E.A. Sween persisting in
its refusal to bargain, the Board filed this application for
enforcement.

## II.

We may review the Board's certification decision once
the Board has determined that an unfair labor practice
has occurred. *See* 29 U.S.C. § 159(d); *Boire v. Greyhound
Corp.*, 376 U.S. 473, 476-79, 84 S. Ct. 894, 11 L. Ed. 2d
849 (1964); *NLRB v. AmeriCold Logistics, Inc.*, 214 F.3d
935, 937 (7th Cir. 2000). We defer to the Board's findings
of fact if they are supported by substantial evidence and
to its legal conclusions if they have a "reasonable basis
in law." *SCA Tissue N. Amer. LLC v. NLRB*, 371 F.3d
983, 987-88 (7th Cir. 2004); *NLRB v. City Wide Insulation
of Madison, Inc.*, 370 F.3d 654, 657 (7th Cir. 2004).

The issue is whether the Board was correct in certifying
the election. E.A. Sween argues again that the election
should be set aside because the Union's campaign flyer
was deceptive and misleading and because the flyer was
a forgery. Under *Midland National Life Ins. Co.*, 263 N.L.R.B.

127, 133 (1982), the Board will not "probe into the truth or falsity of the parties' campaign statements, [or] set elections aside on the basis of misleading campaign statements. [It] will, however, intervene in cases where a party has used forged documents which render the voters unable to recognize propaganda for what it is." The rationale for the rule is that employees are "'mature individuals who are capable of recognizing campaign propaganda . . . and discounting it.'" *Id.* at 130 (quoting *Shopping Kart Food Market, Inc.*, 228 N.L.R.B. 1311, 1313 (1977)).

E.A. Sween urges focus on the first sentence: "'THE U.S. SUPREME [*sic*] HAS HELD THAT ALL EXITING [*sic*] TERMS AND CONDITIONS OF EMPLOYMENT BY LAW MUST REMAIN THE SAME UNTIL AND DURING CONTRACT NEGOTIATIONS OR APPROVED BY EM-PLOYEES.'" Irrespective of whether it is deceptive or misleading, the sentence is certainly not a "forgery"—a counterfeit—of a Supreme Court decision. It is not explicitly attributed to the Supreme *Court*; neither does the quoted portion reflect language or syntax a learned justice would possibly use.

Failing that, E.A. Sween argues that the first sentence led employees to believe that the quoted text was the holding of a Supreme Court case, a deception that justifies our adopting the Sixth Circuit's exception to *Midland* in circumstances "where no forgery can be proved, but . . . the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth and . . . their right

to free and fair choice will be affected." *NLRB v. Hub Plastics*, 52 F.3d 608, 612 (6th Cir. 1995) (quoting *Van Dorn Plastic Mach. Co. v. NLRB*, 736 F.2d 343, 348 (6th Cir. 1984)). As this court has previously recognized, however, there is no need to determine the limits of *Midland* where the "situation . . . fall[s] squarely in the heartland of the *Midland* doctrine—statements regarding a campaign issue that voters could easily recognize as propaganda." *Uniroyal Tech. Corp., Royalite Div. v. NLRB*, 98 F.3d 993, 1003 & n.29 (7th Cir. 1996) (citing *NLRB v. Affiliated Midwest Hosp.*, 789 F.2d 524, 528-29 & n.3 (7th Cir. 1986); *NLRB v. Chicago Marine Containers*, 745 F.2d 493, 498-500 (7th Cir. 1984)). Far from artfully deceptive, the first sentence makes no sense. Apparently the author recognized as much because the second sentence explains the first with an essentially correct statement of the law: "THAT STATEMENT MEANS THAT IF YOU ARE DUE A SCHEDULED RAISE AT ANY TIME DURING THE CONTRACT NEGOTIATION PERIOD, BY LAW THE COMPANY MUST GIVE YOU THAT RAISE." *See Advo System Inc.*, 297 N.L.R.B. 926, 940 (1990); *Arrow Elastic Corp.*, 230 N.L.R.B. 110, 113 (1977), *enforced*, 573 F.2d 702 (1st Cir. 1978). Whether the first sentence is misleading or simply meaningless, the second sentence clearly explains what the Union intended to convey.

The findings of the Board that the statement was not a forgery and, although misleading, did not justify setting aside the election, is neither without substantial evidentiary basis in the hearing record nor based on an incorrect statement of the law.

## CONCLUSION

Accordingly, the Board's application for an order judicially enforcing its entire order is granted.