In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 11-1883 & 11-2058

RUAN TRANSPORT CORPORATION,

*Petitioner/Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner.*

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board.
No. 13 CA 46555

ARGUED OCTOBER 19, 2011—DECIDED MARCH 19, 2012

Before FLAUM and MANION, *Circuit Judges,* and MAGNUS-STINSON, *District Judge.*[*]

MANION, *Circuit Judge.* Following a vote by the employees of a truck transportation company named Ruan Transport, the National Labor Relations Board certified

_____

[*] The Honorable Jane E. Magnus-Stinson of the Southern District of Indiana, sitting by designation.

a local union to be the representative for Ruan's employees. Ruan now petitions this court to reverse the Board's decision, while the Board cross-petitions us to enforce its decision. The dispute turns on whether a ballot with irregular markings—the deciding vote in the election—should be counted. Because we conclude that it was not an abuse of discretion for the Board to find that the challenged ballot indicates the clear intent of the voter, we affirm the Board's decision certifying the union.

I.

Ruan is a truck transportation company that employs truck drivers and warehouse spotters. In February 2010, the Teamsters Local 705 union filed a representation petition seeking to be the union representative of the drivers working at Ruan's Castle Metal facility near Chicago. Another union, Teamsters Local 710, was also interested in representing Ruan's employees. As a result of the representation petition, the National Labor Relations Board conducted an election. On the ballot, Ruan's workers were able to mark a choice for representation by Local 705, a choice for representation by the intervening union Local 710, or a choice for neither. The initial results of the election were twelve votes for Local 705, eleven votes for Local 710, no votes for neither, and two challenged ballots. After a stipulation from the parties, one of the challenged ballots was opened and counted, giving a final revised tally of twelve votes for Local 705 and twelve votes for Local 710.

Because of the tie, a run-off election by mail became necessary. Beginning May 14, 2010, ballots were printed

on bright pink paper and mailed to all voters. On each ballot were two boxes, one for Local 705 and one for Local 710. Each ballot also had the printed instruction to "mark an 'X' in the square of your choice." Finally, at the bottom of each ballot was the instruction, "If you spoil this ballot return it to the Board Agent for a new one."

On June 2, the votes were tallied. Local 705 and Local 710 received fourteen votes each, with two challenged ballots. One ballot was challenged because it was cast by an ineligible voter—a person who had resigned from employment with Ruan before the date of the election. The challenge was sustained by the Hearing Officer reviewing the election, and that finding was adopted by the Board. This ballot is not at issue on appeal.

It is the second challenged ballot that is at issue—a ballot with markings in both the box for Local 705 and the box for Local 710. The original ballot was submitted to this court as an exhibit on appeal, and we have examined it. (A copy of the ballot is included in this opinion as Appendix A.) In the left-hand box, the one for Local 705, there is a clear, heavily marked "X" in black ink filling the entire box, with no additional markings. In the right-hand box, the one for Local 710, there is a faintly visible "X" in black ink filling the box—the "X" is partially smudged and partially scratched out. Also, the "X" in the right-hand box has been shaded or colored over by what appears to be a pink or purple highlighter with an ink color that is similar, but slightly darker, than the color of the pink ballot paper. As a result of these supplemental markings, the paper inside the box has been

darkened to a pink-purple color that does not match the bright pink of the rest of the paper.

Ruan challenged the ballot, arguing that it should be deemed void because the intent of the voter was unclear. The Hearing Officer reviewing the election overruled Ruan's challenge, concluding that the voter had attempted to obliterate his marking in the Local 710 box and had "clearly and unambiguously" expressed an intent to vote for Local 705. Ruan and Local 710 appealed this ruling, but a three-member panel of the Board affirmed the decision. This gave a tally of fifteen votes for Local 705 and fourteen votes for Local 710. With a majority of the ballots in favor of Local 705, the Board certified Local 705 as the exclusive collective bargaining representative for Ruan's employees.

After this union certification, Local 705 sought to bargain with Ruan. Ruan disputed the validity of the Board's certification, and it refused to recognize or bargain with Local 705. "Refusing to bargain is the only way for an employer to get judicial review of an NLRB decision upholding an election and certifying a union." *NLRB v. AmeriCold Logistics, Inc.*, 214 F.3d 935, 937 (7th Cir. 2000). As a result, Local 705 filed an unfair-labor-practice charge, and the Board's General Counsel issued a complaint that Ruan's refusal to bargain with Local 705 violated Section 8(a)(5) and (1) of the National Labor Relations Act. *See* 29 U.S.C. § 158(a)(1), (5). Ruan admitted that it refused to bargain, but argued that Local 705's certification as union representative was improper. The Board granted summary judgment

against Ruan, finding Ruan in violation of the Act and ordering it to recognize Local 705 as the lawful bargaining representative for Ruan's employees. Ruan then appealed to this court for review of the Board's decision, while the Board filed a cross-application to this court in order to seek enforcement of its decision.

## II.

"We may review the Board's certification decision once the Board has determined that an unfair labor practice has occurred." *NLRB v. E.A. Sween Co.*, 640 F.3d 781, 784 (7th Cir. 2011). As the Supreme Court has explained, "Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees*." NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330 (1946). That means that "our review of the Board's decision to certify a collective bargaining agent following an election is extremely limited*." NLRB v. Chicago Tribune Co.*, 943 F.2d 791, 794 (7th Cir. 1991). We always "presume the validity of a Board-supervised election and will affirm the Board's certification of a union if that decision is supported by substantial evidence." *AmeriCold Logistics, Inc.*, 214 F.3d at 937.

As a preliminary matter, Ruan claims that the union certification was improper because of a due process violation on the part of the Hearing Officer and the Board, based on their allegedly incomplete review of the record and their failure to inspect the original ballot. But there is nothing in the record to support Ruan's position.

It is evident from the Hearing Officer's description of the ballot that the Hearing Officer reviewed the actual ballot and not a photocopy as supposed by Ruan. And there is nothing in the record to indicate that the three-member panel of the Board did not properly review the entire record when it affirmed the Hearing Officer's decision. In its order, the Board declared that it had reviewed the record, and this decision has a "presumption of regularity." *NLRB v. Jasper Chair Co.*, 138 F.2d 756, 758 (7th Cir. 1943). So we can quickly dismiss this argument and move to Ruan's central argument: that the decision to certify Local 705 is not supported by substantial evidence because it is impossible to determine the clear intent of the voter from the challenged ballot's irregular markings.

"The Board's policy—and the rule in this circuit—is to count ballots when the voters' intent is clear, despite irregularities in the manner in which the ballots have been marked. We give deference to the Board's interpretation of a ballot and will reverse only for abuse of discretion." *AmeriCold Logistics, Inc.*, 214 F.3d at 939 (internal citations omitted). Neither the fact that a ballot has irregular markings, nor the fact that a ballot instructs the voter to obtain a new ballot if the ballot is spoiled, are reasons to invalidate the ballot. Instead, "the Board's longstanding policy is to give effect to voter intent whenever possible. Thus the Board will count a ballot where, despite an irregularity in the manner in which it has been marked, it clearly expresses the voter's intent." *Brooks Brothers, Inc.*, 316 N.L.R.B. 176, 176 (1995) (internal citations omitted).

This principle is illustrated by the Board's decision in *Brooks Brothers*. In that case, the ballot had an "X" in the "no" box. *Id.* There was also an apparent "X" marked in the "yes" box, but it had been scratched over with additional pencil markings. *Id.* The Board concluded that the voter's intent was clearly expressed—that he or she had "effectively and clearly obliterated" the "X" in the "yes" box and left an "unmistakable" "X" in the "no" box—and, therefore, the voter had intended to vote "no." *Id.*

A similar example can be found in the Board's decision in *Abtex Beverage Corp.*, 237 N.L.R.B. 1271 (1978). In that case, there was an "X" in both the "no" and "yes" boxes, but the "X" in the "no" box had been scratched over with circular markings. *Id.* at 1271. The Board found that because the voter could not erase his ink mark in the "no" box, he had attempted to obliterate the mark by making the circular markings, leaving clear his intent to vote "yes." *Id.*

In contrast to *Brooks Brothers* and *Abtex Beverage* is the Board's earlier decision in *Mercy College*, 212 N.L.R.B. 925 (1974), which offers the strongest support for Ruan's argument that the Board's decision to accept the ballot in the case before us is not based on substantial evidence. In *Mercy College*, the challenged ballot had an "X" in the "yes" box, but apparently in the "no" box there was a discernible "X" that was heavily shaded over. *Id.* at 925. In that case, a two-person majority of the Board ruled that the intent of the voter was "not free from doubt" because "the markings in either of the designated

squares, absent the marking in the other square, would be considered a clear indication of the intent of the voter." *Id.*[1] A similar case in support of Ruan's position is *Sadler Bros. Trucking & Leasing Co.*, 225 N.L.R.B. 194 (1976). In *Sadler*, one box on the ballot had an "X" while the other box was completely blacked in. *Id.* at 196. Citing to the *Mercy College* decision for support, the Board simply stated that the voter's intention "was not free from doubt," and accordingly, deemed the ballot void. *Id.*

It is important to note that in the *Brooks Brothers* case, the Board considered the *Mercy College* case and characterized it as an instance where "the Board found that the shading added to one side of the ballot was inadequate to show that an attempt to obliterate that choice had occurred." *Brooks Brothers, Inc.*, 316 N.L.R.B. at 176. The question for us, then, is whether it is possible to discern a clear expression of the voter's intent based on the ballot's irregular markings. We have reviewed the original ballot, and we find that it is possible.

As we described above, the "X" in the Local 710 box is partially smudged and partially scratched out, and it has been colored over with a highlighter that closely matches the color of the ballot paper. This distinguishes the case from the facts in *Mercy College* and *Sadler*, as this is not a situation where the shading "was inadequate

---

[1] The third Board member on the panel dissented, finding that it was reasonable to conclude that the voter had intended to obliterate the "X" in the "no" box. *Mercy College*, 212 N.L.R.B. at 926.

to show that an attempt to obliterate that choice had occurred*." Brooks Brothers*, 316 N.L.R.B. at 176. Here, the voter obviously attempted to rub out the "X" and then colored over it with a highlighter similar in color to that of the ballot paper in order to minimize the appearance of the marking in the Local 710 box. Alongside this attempt to obliterate the marking in the Local 710 box, the voter left a distinct, heavily-marked "X" in the Local 705 box, made with multiple pen strokes. Despite the ballot's irregularities, the intent of the voter in favor of Local 705 is clear; thus, the Board did not abuse its discretion when it counted the ballot. *See AmeriCold Logistics, Inc.*, 214 F.3d at 939.

### III.

For these reasons, we affirm the Board's decision certifying Local 705 as the union representative of Ruan's employees. Under Section 8(a)(5) and (1) of the National Labor Relations Act, Ruan is required to bargain with Local 705.

APPENDIX A

